1  JEFFREY N. WILLIAMS (SBN 274008)
   jwilliams@wargofrench.com
2  WARGO & FRENCH LLP
   601 S. Figueroa St., Suite 4625
3  Los Angeles, CA 90017
   Tel: (310) 853-6300
4  Fax: (310) 853-6333

5

6  Attorneys for Defendant
   OMAZE, INC.

7
                  **UNITED STATES DISTRICT COURT**
8
                  **NORTHERN DISTRICT OF CALIFORNIA**
9

10  ANDREAS KNÜTTEL, MATTHEW              Case No. 4:21-cv-02726-JST
    JURANEK, AND ADRIANA CARLIN as
11  individuals, on behalf of themselves, the    **REPLY MEMORANDUM IN**
    general public and those similarly situated,  **SUPPORT OF MOTION TO**
12                                                 **DISMISS FOR IMPROPER**
                                                   **VENUE, OR IN THE**
13         Plaintiffs,                             **ALTERNATIVE, TO TRANSFER**
                                                   **VENUE**
14  v.

15                                                 Date: August 12, 2021
    OMAZE, INC., a Delaware Corporation,           Time: 2:00pm
16                                                 Courtroom: 6
           Defendant.
17
                                                   Complaint Filed: April 15, 2021
18
                                                   Hon. Jon S. Tigar
19

20

21

22

23

24

25

26

27

28

1

# <u>TABLE OF CONTENTS</u>

2

**Page No.**

TABLE OF CONTENTS .............................................................................................. i

TABLE OF AUTHORITIES ........................................................................................ ii

I.      INTRODUCTION................................................................................................ 1

II.     ARGUMENT ...................................................................................................... 2

     A.      Plaintiffs' Newly-Raised § 1391(b)(1) Argument Similarly Fails to
Establish that Venue Is Proper in This District......................................... 2

     B.      Plaintiffs Intentionally Fail to Present Evidence that They Allegedly
Did Not See or Agree to the Forum-Selection Clause, Yet Were on
Inquiry Notice of It All the Same ............................................................. 6

     C.      The Central District Remains the Most Convenient Forum. ................... 9

III.    CONCLUSION................................................................................................. 11

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**REPLY ISO MOTION TO DISMISS FOR IMPROPER VENUE**

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page No.**

3

**Cases**

4

*Alcatel Lucent USA, Inc. v. Dugdale Commc'ns, Inc.*,
  No. CV 09-2140 PSG(JCX), 2010 WL 883831 (C.D. Cal. Mar. 5, 2010) ............... 8

5

6

*AMA Multimedia, LLC v. Wanat*,
  970 F.3d 1201 (9th Cir. 2020) ........................................................................... 3, 4, 5

7

*Ambriz v. Coca Cola Co.*,
  No. 13-CV-03539-JST, 2014 WL 296159 (N.D. Cal. Jan. 27, 2014) ................... 2, 5

8

9

*Daimler AG v. Bauman*,
  571 U.S. 117, 134 S. Ct. 746 (2014) ........................................................................ 3

10

11

*Derbaremdiker v. Applebee's Int'l, Inc.*,
  No. 12-CV-01058 KAM, 2012 WL 4482057 (E.D.N.Y. Sept. 26, 2012) ............. 7, 8

12

*DFSB Kollective Co. v. Bourne*,
  897 F. Supp. 2d 871 (N.D. Cal. 2012) ............................................................... 3, 4, 5

13

14

*Doe 1 v. AOL LLC*,
  552 F.3d 1077 (9th Cir. 2009) .................................................................................. 8

15

*Dukes v. Wal–Mart Stores, Inc.*,
  No. 01–cv–2252–MJJ, 2001 WL 1902806 (N.D. Cal. Dec. 3, 2001) ..................... 2

16

17

*Ebates Inc. v. Cashbag.co.za*,
  No. 18-CV-02884-EDL, 2018 WL 6816113 (N.D. Cal. Oct. 30, 2018) ................... 3

18

19

*Hawkins v. Gerber Prod. Co.*,
  924 F. Supp. 2d 1208 (S.D. Cal. 2013) ................................................................... 10

20

*Howards v. Fifth Third Bank*,
  No. CV-18-01963-DDP-PLAX, 2018 WL 7890667 (C.D. Cal. Dec. 7, 2018)......... 8

21

22

*Indep. Fin. Grp., LLC v. Quest Tr. Co.*,
  No. 3:21-CV-00537-WHO, 2021 WL 2550397 (N.D. Cal. June 22, 2021)............. 8

23

*Lax v. Toyota Motor Corp.*,
  65 F. Supp. 3d 772 (N.D. Cal. 2014) ................................................................. 9, 10

24

25

*Leroy v. Great W. United Corp.*,
  443 U.S. 173, 99 S.Ct. 2710 (1979) ........................................................................ 6

26

*Massie v. Gen. Motors Co.*,
  No. 1:20-CV-01560-JLT, 2021 WL 2142728 (E.D. Cal. May 26, 2021) ............... 6

27

28

ii

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (9th Cir. 2014) ..................................................................... 7

*San Francisco Tech., Inc. v. The Glad Prod. Co.*,
  No. 10-CV-00966, 2010 WL 2943537 (N.D. Cal. July 26, 2010) ......................... 10

*Sanho Corp. v. Cimo Techs., Inc.*,
  No. C 11-2473 PJH, 2012 WL 3075094 (N.D. Cal. July 30, 2012) ......................... 4

**Statutes**

28 U.S.C. § 1391(b)(1) ................................................................................... 2, 6

28 U.S.C. § 1391(b)(2) ................................................................................... 2, 6

28 U.S.C. § 1391(d) ..................................................................................... 2, 5, 6

28 U.S.C. § 1404 ........................................................................................ passim

## I. <u>INTRODUCTION</u>

In its original Motion, Omaze primarily demonstrated that this case is improperly venued because Plaintiffs' ***own Complaint*** concedes that no "substantial part" of the events or omissions giving rise to Plaintiffs' claims occurred in the Northern District, as they had alleged.  In the alternative, Omaze demonstrated that transfer to the Central District is required due to a forum-selection clause in the Sweepstakes Official Rules requiring that claims be brought in a Los Angeles court or, barring that, based on the convenience factors under 28 U.S.C. § 1404(a).

In opposition, Plaintiffs assert a completely new and unpled venue theory—that notwithstanding where the events and omissions giving rise to Plaintiffs' claims occurred, venue is proper in the Northern District because Omaze "resides" here.  To show that Omaze "resides" in this district for venue purposes, Plaintiffs' burden is to present evidence showing that Omaze "expressly aimed" its purportedly-tortious conduct at this district.  Yet the only evidence of record is that Omaze operated a widely-accessible website which one of the three plaintiffs happened to access while sitting in San Jose, which is plainly insufficient.

Plaintiffs also hope to avoid transfer based on the forum-selection clause by arguing that they "did not agree" to the Official Rules in which the clause was presented to them, though they again present no evidence of the same.  Their failure to submit even a single declaration as evidence to support their allegation that they never noticed the numerous prominent links to Omaze's Official Rules—including within documents they expressly allege "relying on"—is telling.  The Court should disregard such unsubstantiated remarks, and the case law demonstrates that Plaintiffs were at least on inquiry notice of the Official Rules in any event.  Finally, Plaintiffs' analysis of the § 1404(a) factors places too much weight on ***one*** plaintiff's choice of forum and falsely suggests that transfer would burden a non-party witness.

Accordingly, the Court should grant the Motion and dismiss the case for improper venue or transfer to the Central District.

**REPLY ISO MOTION TO DISMISS FOR IMPROPER VENUE**

1    II.    **ARGUMENT**

2      A.    **Plaintiffs' Newly-Raised § 1391(b)(1) Argument Similarly Fails to**

3        **Establish that Venue Is Proper in This District**

4      Plaintiffs expressly alleged in their Complaint that "[v]enue is proper in this

5 District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or

6 omissions giving rise to the claims occurred in the state of California, including

7 within this District." ECF No. 1 at ¶ 23. Plaintiffs also alleged, however, that the

8 "wrongful acts and omissions" in this case "were carried out and/or directed from

9 [Omaze's] California headquarters" in ***Los Angeles***. *Id.* at ¶¶ 19, 22. In the Motion,

10 Omaze showed that this allegation conclusively refuted any potential ground for

11 proper venue under § 1391(b)(2), and Plaintiffs do not even attempt to oppose with

12 evidence or reasoned argument. Plaintiffs instead reverse course and, for the ***first***

13 ***time*** in their Opposition, seek to establish venue under § 1391(b)(1) instead. Even if

14 this were a permissible litigation tactic, venue remains improper under § 1391(b)(1)

15 as well, and the Motion must be granted.

16      Venue may lie in "a judicial district in which any defendant resides, if all

17 defendants are residents of the State in which the district is located." 28 U.S.C. §

18 1391(b)(1). In California, a corporate defendant "shall be deemed to reside in any

19 district . . . within which its contacts would be sufficient to subject it to personal

20 jurisdiction if that district were a separate State, and, if there is no such district, the

21 corporation shall be deemed to reside in the district within which it has the most

22 significant contact." 28 U.S.C. § 1391(d). As always, the "burden of establishing

23 that venue is proper" lies with the plaintiff, and "each plaintiff in a class action must

24 individually satisfy venue." *Ambriz v. Coca Cola Co.*, No. 13-CV-03539-JST, 2014

25 WL 296159, at *4-5 (N.D. Cal. Jan. 27, 2014), citing *Dukes v. Wal–Mart Stores,*

26 *Inc.,* No. 01–cv–2252–MJJ, 2001 WL 1902806 (N.D. Cal. Dec. 3, 2001).

27

28

**REPLY ISO MOTION TO DISMISS FOR IMPROPER VENUE**

1    Plaintiffs' superficial analysis claims that Omaze "resides" in the Northern

2  District for venue purposes because it is subject to specific personal jurisdiction[1]

3  based on its alleged "contacts with the forum." Opp. at 4.  In tort cases such as this,

4  the Ninth Circuit's minimum contacts analysis primarily assesses whether the plaintiff

5  has met its affirmative burden of showing that the defendant has "purposely directed"

6  its conduct at the forum in question. *DFSB Kollective Co. v. Bourne*, 897 F. Supp. 2d

7  871, 879 (N.D. Cal. 2012).  Purposeful direction requires that the defendant "must

8  have 1) committed an intentional act, which was 2) ***expressly aimed at the forum***

9  state and 3) caused harm, the brunt of which is suffered and which the defendant

10  knows is likely to be suffered in the forum state." *Id.* at 880 (emphasis added).

11  Indeed, the plaintiff's evidence must show that the defendant has "continuously and

12  deliberately exploited the [relevant forum's] market." *AMA Multimedia, LLC v.*

13  *Wanat*, 970 F.3d 1201, 1210 (9th Cir. 2020).

14    Here, Plaintiffs' ***sole*** evidence of alleged "express aiming" is Mr. Knüttel's

15  declaration stating that he—and he alone—accessed Omaze's website to enter

16  sweepstakes from a computer and Internet connection physically situated in San Jose,

17  California.  ECF No. 1, Ex. C at ¶ 3.  This is wholly insufficient to meet Plaintiffs'

18  burden to establish that Omaze aimed its purportedly-tortious conduct at the Northern

19  District at all, much less in a "continuous[] and deliberate[]" manner.

20    For example, in *Ebates Inc. v. Cashbag.co.za*, No. 18-CV-02884-EDL, 2018

21  WL 6816113, at *4 (N.D. Cal. Oct. 30, 2018), the plaintiffs did not establish

22  jurisdiction where they made "only one specific allegation about an individual in the

23  Northern District of California accessing the CashBag website to create an account,

---

[1] Personal jurisdiction may either be "general or all-purpose jurisdiction," or "specific or case-linked jurisdiction." *Id.* at *3.  Omaze is clearly not subject to general personal jurisdiction in the Northern District of California because it is incorporated in Delaware and its principal place of business is in the Central District of California. *Daimler AG v. Bauman*, 571 U.S. 117, 134 S. Ct. 746, 761 (2014).  Plaintiffs do not seriously contend otherwise.

1   make a purchase, and receive cash back rewards," and there was no evidence the

2   defendants had "plac[ed] advertisements targeting California residents" or that the

3   website "had a specific focus on California." *Id.*

4          In *DFSB Kollective Co.*, 897 F. Supp. 2d at 879-81, the court observed that a

5   defendant does not "expressly aim" its tortious conduct at a forum state where it

6   "merely operates a website, even a highly interactive website, that is accessible from,

7   but does not target, the forum state." *Id.*  Thus, because the plaintiffs failed to

8   "identify anything on the Websites that is directed to California or even references

9   California," jurisdiction was lacking. *Id.*

10         In *Sanho Corp. v. Cimo Techs., Inc.*, No. C 11-2473 PJH, 2012 WL 3075094,

11  at *5 (N.D. Cal. July 30, 2012), the plaintiffs failed to establish jurisdiction over the

12  operator of a website selling iPad covers by placing "nothing in the record to suggest

13  that CIMO's website was directly targeted at the California market, or that the selling

14  of technology-related accessories, specifically iPad 2 covers, is a unique California

15  industry." *Id.*  The court specifically distinguished a prior case finding express

16  aiming where "it was clear from the record that the defendant's very popular website

17  specifically targeted the California market, and focused specifically on California's

18  unique celebrity and entertainment industries." *Id.*

19         And in *AMA Multimedia* itself, the Ninth Circuit held that even such substantial

20  evidence as: "(1) [the defendant's] use of geotargeted advertisements and the

21  purported corresponding U.S. revenue, (2) [the subject website's] U.S. viewer-base,

22  which comprises 19.21% of the site's total visitors, (3) [the subject website's] Terms

23  of Service ('TOS'), referred to as a 'contractual agreement,' and (4) the use of the

24  U.S.-based Tiggee [a third-party DNS provider]" was not enough to establish the

25  defendant's express aiming of its conduct toward the relevant forum (in that case, the

26  U.S. as a whole). 970 F.3d at 1210-12.  Notably, the dissenting opinion contended

27  that "express aiming" should be deemed satisfied simply where the defendant

28  "anticipated, desired and achieved" that its website would reach a base of customers

**4**
**REPLY ISO MOTION TO DISMISS FOR IMPROPER VENUE**

1   in the forum, even if it was not actually targeted to that forum in any particular way.

2   *Id.* at 1220 (Gould, J., dissenting).  The majority *rejected* this approach, specifically

3   holding that there was no jurisdiction because "the United States was not 'the focal

4   point' of the website 'and of the harm suffered.'"  *Id.* at 1212.

5        So too, here.  The sole evidence of record is that Omaze operates a website

6   with nationwide scope—with all decision-making and marketing centralized at its Los

7   Angeles headquarters—and that a single plaintiff, Mr. Knüttel, happened to interact

8   with the website within the Northern District of California.  ECF No. 17, ¶ 3; ECF

9   No. 1, Ex. C at ¶ 3.  There is no evidence that Omaze's website made the Northern

10  District of California a "focal point" or that Omaze deliberately exploited a specific

11  market in the Northern District of California, and it is Plaintiffs' burden to present

12  such evidence.  This record is therefore not even sufficient to show that venue is

13  proper as to Mr. Knüttel himself, much less the other two plaintiffs, who undisputedly

14  reside in the Central District.  *See Ambriz*, 2014 WL 296159, at *4-5 ("[E]ach

15  plaintiff in a class action must individually satisfy venue.").[2]  Omaze's "most

16  significant contact" is clearly with the Central District, meaning that it does not

17  "reside" for venue purposes in the Northern District.  28 U.S.C. § 1391(d).

18       Any other result would beget the very due process concern underlying the

19  "express aiming" doctrine in the first instance, amounting to a holding that simply by

20  doing business over the Internet, a defendant would subject itself to personal

21  jurisdiction in every single forum where a plaintiff might interact with its website.

22  *DFSB Kollective Co.*, 897 F. Supp. 2d at 884; *see also Massie v. Gen. Motors Co.*,

23  ─────────────────────
24  [2] Plaintiffs baselessly suggest that Omaze's "advertisements" are somehow at issue,
    and that Mr. Knüttel "signed up for Omaze's emails."  ECF No. 26 at 4; ECF No. 1 at
25  ¶ 106.  They submit no evidence to support these allegations, which is their burden.
    In any event, they necessarily concede that the alleged e-mails could not have been
26  "expressly aimed" at the Northern District of California because Mr. Juranek and Ms.
    Carlin, sitting in the Central District, received them too.  *Id.* at ¶¶ 118, 128.  Certainly,
27  sending e-mails to all users regardless of their location does no more to target any
28  particular forum than the maintenance of a website accessible from any location.

1  No. 1:20-CV-01560-JLT, 2021 WL 2142728, at *4 (E.D. Cal. May 26, 2021) ("The
2  interactivity of a website is . . . a poor proxy for adequate in-state contacts [and]
3  should not open a defendant up to personal jurisdiction in every spot on the planet
4  where that interactive website is accessible.").  Further, by operation of §§ 1391(b)(1)
5  and 1391(d), that defendant would also be unable to challenge venue in any judicial
6  district in the United States (at least according to Plaintiffs' argument).  Omaze has
7  already explained why this would be manifestly unfair, given that "the purpose of
8  statutorily defined venue is to protect the defendant against the risk that a plaintiff
9  will select an unfair or inconvenient place of trial."  ECF No. 14 at 4, citing *Leroy v.*
10 *Great W. United Corp.*, 443 U.S. 173, 183-84, 99 S.Ct. 2710 (1979).

11     Consequently, Plaintiffs' belated argument for venue under § 1391(b)(1) fails
12 along with their argument for venue under § 1391(b)(2), meaning venue is improper
13 and this case should be dismissed under Rule 12(b)(3).

14     **B.     Plaintiffs Intentionally Fail to Present Evidence that They Allegedly**
15          **Did Not See or Agree to the Forum-Selection Clause, Yet Were on**
16          **Inquiry Notice of it All the Same**

17     Plaintiffs then contend that the forum-selection clause in the sweepstakes
18 Official Rules should not be enforced because—according to the main heading of
19 their argument—"Plaintiffs Did Not Agree to Omaze's Forum-Selection Clause."
20 ECF No. 26 at 5.  The basis for this contention is purely a legal conclusion without
21 any supporting evidence.  Plaintiffs assert that whether or not they agreed to the
22 Official Rules is a question of "whether the website puts a reasonably prudent user on
23 inquiry notice of the terms of the contract," and assert in conclusory fashion that a
24 reasonably prudent user would not have been on notice of the existence of the Official
25 Rules.  *Id.* at 6.  Because they claim Omaze has not satisfied its initial burden in this
26 respect, they decline to submit ***any evidence whatsoever*** as to whether they saw the
27 links to the Official Rules, clicked on them, or had notice that the sweepstakes were
28 governed by the Official Rules.

1   Omaze, however, has met any initial burden it may have.  Omaze introduced

2   substantial evidence that, when viewed in conjunction with Plaintiffs' admissions,

3   demonstrates that they were *at least* on inquiry notice of the Official Rules.  *See* ECF

4   No. 14 at 7-9.  In fact, Plaintiffs' *own Complaint* establishes that Plaintiffs entered

5   the sweepstakes in question "relying on" the Experience Rules, and attaches a copy of

6   the Experience Rules showing that they reflected multiple, prominent, underlined

7   links in colored text to the Official Rules.  ECF No. 1 ¶¶ 106, 118, 128 and Ex. A.

8   Omaze also submitted exemplar Experience Rules showing the same.  ECF No. 17-1.

9   This is therefore not a case where Plaintiffs were "expected to ferret out

10  hyperlinks to terms and conditions to which they have no reason to suspect they will

11  be bound."  *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014).

12  Indeed, the authority cited by Plaintiffs broadly relates to situations in which a user

13  completes an ordinary-course purchase on a website, having no reason to believe that

14  simple transaction would be governed by a complex set of terms and conditions—

15  even if a hyperlink is provided to the user in some fashion.  ECF No. 26 at 6-8.  The

16  question here, by contrast, is whether *sweepstakes entrants* are on inquiry notice that

17  the sweepstakes is governed by "official rules" prominently linked multiple times in a

18  document that they *admit reviewing and relying on*.

19  This case is therefore more like *Derbaremdiker v. Applebee's Int'l, Inc.*, No. 12-

20  CV-01058 KAM, 2012 WL 4482057, at *6 (E.D.N.Y. Sept. 26, 2012) than any of

21  Plaintiffs' cases.  In *Derbaremdiker*, sweepstakes entrants were held to be on notice

22  of disclosures set forth in the official rules where they admittedly viewed a receipt

23  directing them to view a website for "rules/details," and the website bore a hyperlink

24  stating "click here for official rules."  *Id.*  Plaintiffs here were likewise directed to

25  review the Official Rules within the Experience Rules that they admit "relying on."

26  *See* ECF No. 1, Ex. A (stating, on two occasions, "[s]ee our Sweepstakes Official

27  Rules for more details" and prominently hyperlinking the words "Sweepstakes

28  Official Rules" to the Official Rules).  The *Derbaremdiker* court also rejected the

7

**REPLY ISO MOTION TO DISMISS FOR IMPROPER VENUE**

1  plaintiff's argument, repeated by Plaintiffs here, that the "defendant should have

2  required an entrant to review the Official Rules and accept its terms and conditions

3  prior to entering the Sweepstakes (e.g., by clicking a box)." *Id.*

4         Plaintiffs, for their part, cite no case discussing the concept of inquiry notice

5  upon a reasonably prudent sweepstakes entrant.  Nor do they introduce any evidence

6  that their supposed unawareness of the Official Rules was reasonable under the

7  circumstances (*e.g.*, their admitted reliance on a document reflecting multiple

8  prominent hyperlinks to the Official Rules).  Accordingly, Plaintiffs were on inquiry

9  notice of the Official Rules and the forum-selection clause therein.

10        In any event, the concept of inquiry notice presupposes that Plaintiffs did not

11 *actually* see the Official Rules, a fact of which they are in sole possession and have

12 tellingly refused to disclose to this Court via declaration or otherwise.  As Omaze

13 has—at minimum—met whatever initial burden it may have had to show how the

14 Official Rules were presented to Plaintiffs, the question of whether Plaintiffs viewed

15 them must be met by Plaintiffs.[3]  "A forum selection clause is presumptively valid;

16 the party seeking to avoid a forum selection clause bears a 'heavy burden' to establish

17 a ground upon which [the court] will conclude the clause is unenforceable." *Doe 1 v.*

18 *AOL LLC*, 552 F.3d 1077, 1083 (9th Cir. 2009).[4]

19 ───────────────
20 [3] "Courts may consider facts outside the pleadings when ruling on motions to transfer
   brought under 28 U.S.C. § 1404." *Howards v. Fifth Third Bank*, No. CV-18-01963-
21 DDP-PLAX, 2018 WL 7890667, at *1 (C.D. Cal. Dec. 7, 2018).

22 [4] Plaintiffs' cases on this point are inapposite.  In *Indep. Fin. Grp., LLC v. Quest Tr.*
   *Co.*, No. 3:21-CV-00537-WHO, 2021 WL 2550397, at *5 n.2 (N.D. Cal. June 22,
23 2021) the court actually held that the "burden rests with the party seeking to escape
   the forum selection clause" and found that the plaintiff failed to meet that burden,
24 mandating transfer.  The quoted footnote merely pertained to separate contracts the
   defendant failed to place before the court.  Here, Omaze has placed the Official Rules
25 before the Court.  And in *Alcatel Lucent USA, Inc. v. Dugdale Commc'ns, Inc.*, No.
   CV 09-2140 PSG(JCX), 2010 WL 883831, at *13 (C.D. Cal. Mar. 5, 2010), the party
26 resisting application of the forum selection clause made at least a prima facie case that
27 the entire contract had been superseded by another agreement.  Plaintiffs present no
28 similar evidence here.

1      The Court should thus disregard Plaintiffs' unsupported argument that they did

2  not see or agree to the Official Rules, and enforce the forum-selection clause.

3      **C.   The Central District Remains the Most Convenient Forum.**

4      Finally, Plaintiffs seek to rebut Omaze's § 1404(a) analysis, under which

5  Omaze showed that the only factor linking this case to the Northern District is the

6  residence of one of the three named plaintiffs, and all other transfer factors are either

7  neutral or weigh in favor of transfer.

8      Plaintiffs' primary argument is that Mr. Knüttel's choice of forum should be

9  given "substantial weight" based on the "weight of authority" cited in the opposition.

10  ECF No. 26 at 8-9.  These cases are distinguishable because of the strength of the

11  connection to the forum created by the in-forum resident's claim.  For example, in

12  *Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772, 778 (N.D. Cal. 2014), the in-forum

13  resident purchased her allegedly-defective vehicle and had it serviced at a physical

14  location situated within the subject forum.  Further, the defendant admitted it had an

15  office within the forum that interfaced with dealers on sales, service, and parts issues,

16  which the court found to "establish[] that [the defendant] has a connection to this

17  forum on issues (sales, service) related to the allegations of the complaint." *Id.*  Thus,

18  the core finding in that case was that "[p]laintiffs' and defendants' significant contacts

19  with the forum related to the claims in the Complaint give weight to plaintiff's choice

20  of forum, despite the fact that this is a class action." *Id.*  The facts of this case are

21  completely different, as Omaze simply operated a website that Mr. Knuttel happened

22  to access in this forum, and the "events and omissions" giving rise to his allegations

23  from a venue perspective[5] all occurred in the Central District.  ECF No. 14 at 3-5.

24      If that were not enough, Plaintiffs' quotation of *Lax* is conveniently cut short.

25  *See* ECF No. 26 at 9 ("That only one of the seven named plaintiffs has a connection to

26  _____

27  [5] Again, the venue analysis focuses on activities of the defendant, and is conceptually distinct from the "place of the wrong" analysis used to determine choice-of-law

28  issues.  Mtn. at 5, n.1.

1  this forum, when two others have a connection to the Central District, does not

2  undermine the weight to be given plaintiffs' choice of forum.").  The very next

3  sentence states: "***Perhaps if there were only three named plaintiffs in this case, the***

4  ***fact that two were in the Central District might be more persuasive and weigh***

5  ***heavier on the other factors discussed below***."  65 F. Supp. 3d at 778-79 (emphasis

6  added).  That is the exact situation at issue in this case.  Thus, Mr. Knüttel's choice of

7  forum is not entitled to substantial weight in the transfer analysis.

8      The more compelling facts are that the evidence and party witnesses—

9  including Mr. Juranek and Ms. Carlin themselves—are situated in the Central District,

10  making it a more appropriate forum to litigate the case.[6]  "[I]n a false advertising

11  action, the heart of the matter lies where the marketing and manufacturing decisions

12  were made, which is typically at Defendant's headquarters."  *Hawkins v. Gerber*

13  *Prod. Co.*, 924 F. Supp. 2d 1208, 1215 (S.D. Cal. 2013); *see also San Francisco*

14  *Tech., Inc. v. The Glad Prod. Co.*, No. 10-CV-00966, 2010 WL 2943537, at *8 (N.D.

15  Cal. July 26, 2010) (where "corporate headquarters, sole distribution facility, sole

16  manufacturing facility, and advertising staff" were located outside the subject forum,

17  the parties' "respective contacts with [the subject forum] [we]re dwarfed by their

18  contacts with the [transferee] forums" and transfer was appropriate).  Further, even

19  where ESI discovery is conceivably available, the location of evidence outside the

20  subject forum still weighs in favor of transfer.  *Hawkins*, 924 F. Supp. 2d at 1216.

21      Last, Plaintiffs argue that transfer will impose a burden on non-party CAF

22  America because CAF America has an office in San Francisco.  ECF No. 26 at 11-12.

_____

23  [6] Plaintiffs contend that Omaze fails to identify specific evidence or witnesses that are

24  situated outside the Northern District, but Omaze demonstrated that its headquarters is

25  in the Central District and has no other physical locations in California, and Plaintiffs
   have already conceded that the "wrongful acts and omissions" in this case "were

26  carried out and/or directed from [Omaze's] California headquarters."  ECF No. 7 at ¶

27  3; ECF No. 1 at ¶¶ 19, 22.  It is unclear why Omaze would have to identify specific
   evidence or witnesses when ***all*** the evidence and witnesses are situated in the Central

28  District.  Indeed, Omaze's declarant is situated there.  ECF No. 7.

This argument is unavailing because Omaze's dealings with CAF America are through its Virginia headquarters and persons located there, not the satellite office in San Francisco.  *See* Suppl. Decl. of Jessica Segal filed concurrently herewith, ¶ 4. Transfer from the Northern District to the Central District of California will not burden a non-party that is, for all relevant purposes, located in Virginia.

Again, the Court need not conduct the full § 1404(a) analysis either because venue is simply improper in the Northern District or because the forum-selection clause obviates the need to consider any private-interest factors.  If it does, however, the Court should find that the Central District is the more convenient forum in which to litigate this case.

## III.   CONCLUSION

For the foregoing reasons, Omaze respectfully requests that the Court dismiss this case in its entirety pursuant to Fed. R. Civ. P. 12(b)(3), or in the alternative, transfer to the Central District of California pursuant to 28 U.S.C. § 1404(a).

Dated:  July 23, 2021                     WARGO & FRENCH LLP

                                          By:   */s Jeff Williams*
                                          JEFFREY N. WILLIAMS
                                          Attorneys for Defendant Omaze, Inc.