| | |
|---|---|
| JEFFREY N. WILLIAMS (SBN 274008)<br>jwilliams@wargofrench.com<br>WARGO & FRENCH LLP<br>601 S. Figueroa St., Suite 4625<br>Los Angeles, CA 90017<br>Tel: (310) 853-6300<br>Fax: (310) 853-6333<br><br>Attorneys for Defendant<br>OMAZE, INC. | |

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREAS KNÜTTEL, MATTHEW JURANEK, AND ADRIANA CARLIN as individuals, on behalf of themselves, the general public and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>OMAZE, INC., a Delaware Corporation,<br><br>Defendant. | Case No. 4:21-cv-02726-JST<br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Date: August 12, 2021<br>Time: 2:00pm<br>Courtroom: 6<br><br>Complaint Filed: April 15, 2021<br><br>Hon. Jon S. Tigar |

---

**REPLY ISO MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

# TABLE OF CONTENTS

Page No.

TABLE OF CONTENTS ...................................................................................................... i
TABLE OF AUTHORITIES ................................................................................................ ii
I. INTRODUCTION ..................................................................................................... 1
II. ARGUMENT ............................................................................................................. 2
    A. Plaintiffs' CLRA, UCL, FAL and Fraud Claims Fail .............................. 2
        1. Plaintiffs fail to meet the "reasonable consumer" standard. .......... 2
        2. Plaintiffs fail to allege "unlawful" conduct by Omaze. .................. 6
        3. Plaintiffs fail to allege "unfair" conduct by Omaze. ...................... 9
    B. Plaintiffs' Unjust Enrichment Claim Fails ................................................ 11
    C. Plaintiffs Lack Standing to Sue ................................................................ 12
    D. The First Amendment Bars Plaintiffs' Claims Premised upon Charitable Solicitations Concerning the Allocation of Donations ......... 13
    E. Plaintiffs Obfuscate the Complaint's Bare and Conclusory Allegations with a Decade of Historical Allegations ............................. 14
    F. Plaintiffs Are Not Entitled to Leave to Amend ....................................... 15
III. CONCLUSION ........................................................................................................ 16

# TABLE OF AUTHORITIES

**Page No.**

**Cases**

*California Gas. Retailers v. Regal Petro. Corp.*,
  50 Cal. 2d 844 (1958) .................................................................................................. 6

*Clorox Co. v. Reckitt Benckiser Grp. PLC*,
  398 F. Supp. 3d 623 (N.D. Cal. 2019) ...................................................................... 10

*Derbaremdiker v. Applebee's Int'l, Inc.*,
  No. 12-CV-01058 KAM, 2012 WL 4482057 (E.D.N.Y. Sept. 26, 2012) ....... 1, 4, 11

*Erickson v. Nebraska Machinery Co.*,
  No. 15-cv-01147-JD, 2015 WL 4089849 (N.D. Cal. July 6, 2015) .......................... 2

*Gudgel v. Clorox Co.*,
  No. 20-CV-05712-PJH, 2021 WL 212899 (N.D. Cal. Jan. 21, 2021) .................... 11

*Hadley v. Kellogg Sales Co.*,
  243 F. Supp. 3d 1074 (N.D. Cal. 2017) ..................................................................... 9

*Haskell v. Time, Inc.*,
  857 F. Supp. 1392 (E.D. Cal. 1994) .............................................................. 1, 2, 4, 5

*Illinois, ex rel. Madigan v. Telemarketing Assoc., Inc.*,
  538 U.S. 600 (2003) ............................................................................................ 12, 13

*In re Sony Gaming Networks*,
  903 F. Supp. 2d 942 (S.D. Cal. 2012) ..................................................................... 11

*Leadsinger, Inc. v. BMG Music Pub.*,
  512 F.3d 522 (9th Cir. 2008) .................................................................................. 15

*Loomis v. Slendertone Distribution, Inc.*,
  420 F. Supp. 3d 1046 (S.D. Cal. 2019) ..................................................................... 1

*Martinez v. Welk Grp., Inc.*,
  907 F. Supp. 2d 1123 (S.D. Cal. 2012) ................................................................... 10

*Punian v. Gillette Co.*,
  2016 WL 1029607 (N.D. Cal. Mar. 15, 2016) ......................................................... 10

*Riley v. Nat'l Fed. Of the Blind of North Carolina*,
  487 U.S. 781, 108 S. Ct. 2667 (1988) ................................................................. 4, 12

*Webb v. Smart Documents Solutions, LLC*,
  499 F.3d 1078 (9th Cir. 2007) .................................................................................. 9

*Wright v. Publishers Clearing House, Inc.*,
  439 F. Supp. 3d 102 (E.D.N.Y. 2020) ................................................................................ 4

**Statutes**

Cal. Bus. Prof. Code § 17537.1 ............................................................................................ 9
Cal. Bus. Prof. Code § 17539.1(a)(3) .................................................................................... 8
Cal. Bus. Prof. Code § 17539.1(a)(4) .................................................................................... 9
Cal. Bus. Prof. Code § 17539.1(a)(7) .................................................................................... 8
Cal. Bus. Prof. Code § 17539.15(b) ...................................................................................... 7
Cal. Bus. Prof. Code § 17539.15(j) ....................................................................................... 8
Cal. Bus. Prof. Code § 17539.5(e) ........................................................................................ 8
Cal. Pen. Code § 319 ........................................................................................................ 6, 7

I. **INTRODUCTION**

Plaintiffs filed this action alleging that Omaze's disclosures—or alleged lack of disclosures—misled them into donating to charity through Omaze's website, for which they received sweepstakes entries in return. In connection with the instant Motion, Omaze introduced those disclosures (*e.g.,* the Official Rules, the Experience Rules, the About Us/How It Works page, the Terms of Use, etc.), showing among other things that they simply could not be misleading to a reasonable consumer. Plaintiffs simply *ignore* the disclosures in their Opposition and provide no analysis to show why they would be misleading to a reasonable consumer. Instead, they fall back to the conclusory allegations of their Complaint and argue that Omaze's "fact-intensive" analysis cannot be undertaken at this stage of the case. Opp. at 2. But this is wrong. When assessing claims that consumers have been misled, courts may and should examine the very disclosures that they claim to have been misleading to assess the plausibility of the claims. Indeed, the disclosures present facts that are judicially-noticeable and relevant under the Rule 10(c) incorporation by reference doctrine. *See Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1397-98 (E.D. Cal. 1994); *Derbaremdiker v. Applebee's Int'l, Inc.*, No. 12-CV-01058 KAM, 2012 WL 4482057, at *3 (E.D.N.Y. Sept. 26, 2012); *Loomis v. Slendertone Distribution, Inc.*, 420 F. Supp. 3d 1046, 1063 (S.D. Cal. 2019); *see also* Reply in Support of RJN, filed concurrently herewith.

Further, Plaintiffs do not satisfactorily respond to Omaze's other arguments. For example, Omaze pointed out that for all the "background" contained in the Complaint (which even Plaintiffs concede is outside the limitations period and cannot support a claim), Plaintiffs are unable to connect the dots between the disclosure(s) and their own purported conduct in response, at least in any non-conclusory way. This is not a mere pleading gaffe. It is part and parcel of the core defect in Plaintiffs' Complaint. Anyone can manufacture a bald claim that the defendant's disclosure, advertisement or piece of marketing was not phrased in exactly the way they would have liked. Such is the nature of marketing. But it is something else to plausibly

allege that one was reasonably misled by the disclosure into performing an act that caused them a cognizable harm, and Plaintiffs have failed to do so here.

For these reasons and those detailed at more length herein, the Court should grant the Motion and dismiss Plaintiffs' Complaint.

## II.  ARGUMENT

### A.  Plaintiffs' CLRA, UCL, FAL and Fraud Claims Fail

#### 1.  *Plaintiffs fail to meet the "reasonable consumer" standard.*

As shown in the Motion, the disclosures provided by Omaze made clear to any reasonable consumer that Omaze—a commercial charitable fundraiser which is registered as such and openly discloses its commercial fundraising model on its website—would retain a portion of each donation made to cover fees and expenses related to the administration of the related sweepstakes. Indeed, Omaze discloses its relationship with CAF America and the particular allocation of each donation to charity in multiple prominent locations on its website. Mtn. at 11-13. The disclosures also made clear to any reasonable consumer how many entries they may expect to receive as a "thank-you" for donating, how to enter for free, and how free and paid entries were treated (that is, equally). Mtn. at 13-16.

In support, Omaze filed a Request for Judicial Notice and/or Incorporation by Reference ("RJN") showing that decisional law not only permits the Court to consider the facts in these disclosures, but also supplies clear authority for the Court to consider the precise types of records that are the subject of Omaze's request, in the current procedural context. *See e.g., Haskell*, 857 F. Supp. at 1397-98 (exemplars of sweepstakes solicitations could be considered on a motion to dismiss as incorporated by reference under Rule 10(c), despite not being attached to the complaint where the plaintiffs claimed to have been deceived by the mailers); *Erickson v. Nebraska Machinery Co.*, No. 15-cv-01147-JD, 2015 WL 4089849, at *1 n.1 (N.D. Cal. July 6, 2015) ("Courts have taken judicial notice of the contents of web pages available through the Wayback Machine as facts that can be accurately and readily determined

from sources whose accuracy cannot reasonably be questioned"); *Loomis*, 420 F. Supp. 3d at 1063 (examples of defendant's advertisements and webpages considered on defendant's motion to dismiss CLRA, UCL and FAL claims, asserting that a reasonable consumer would not have been misled thereby); ECF No. 18.

      Plaintiffs oppose the RJN separately, which Omaze shall also address separately.  But absent success in persuading the Court not to consider the very disclosures they now claim are misleading, Plaintiffs' strategy of simply ***ignoring*** the disclosures is insufficient to show that they or any other putative class member could reasonably have been misled into donating to charity through Omaze's platform. They simply argue that they satisfied the "who, what, when, where, and how" of their claims by alleging that Omaze's use of the word "donate" led them to believe that "most of the money paid would be transferred to the donated charity."  Opp. at 16-17. It is unclear what Plaintiffs mean by "most" or whether there was some threshold proportion of their donation that they knew Omaze would retain for fees and expenses; indeed, 60% of each donation in an Omaze Premiere Experience goes to the designated charity.  Mtn. at 6.  Whatever their interpretation of the word "donate," however, they could not reasonably have been misled by it given Omaze's frequent and thorough disclosures about how the funds were being used.  By failing to address the substance of these disclosures in any material way or explaining how any statements therein purportedly caused Plaintiffs to suffer harm, Plaintiffs forfeit any argument that they were misleading.

      The closest that Plaintiffs come to any discussion of the disclosures presented by Omaze is their contention that the word "donate" was not presented in close context to information about the allocation of donations.  Opp. at 17-18.  They do not refer to any of the disclosures to substantiate this contention, but even if they had, their real argument is essentially that the word "donate" is ***inherently*** misleading unless explained in minute detail every time it is used.  That is simply untrue.  The word itself does not connote that every cent of a user's donation will be used for any

particular purpose.  Particularly given the clearly-disclosed nature of Omaze's commercial charitable fundraising platform, a reasonable consumer would understand that some of each donation would necessarily have to be used for expenses, such as the expense of purchasing the prize or of running the sweepstakes.  Mtn. at 11-13.

Thus, if truly interested in the specific planned allocation of his or her donation, a reasonable consumer would refer to additional information that Omaze made readily available, regardless of whether it was located directly next to the word "donate" on the website.  *See Riley v. Nat'l Fed. Of the Blind of North Carolina*, 487 U.S. 781, 799, 108 S. Ct. 2667 (1988) (mere fact of fundraiser's professional status provides "notice that at least a portion of the money contributed will be retained"); *see also id. at 804* ("[D]onors are assuredly aware that a portion of their donations may go to solicitation costs and other administrative expenses—whether the solicitor is a professional, an in-house employee, or even a volunteer…") (Scalia, J., concurring in part).  Plaintiffs, of course, do not plausibly allege they were prevented from referring to this available information, nor do they allege they were misled into believing that information was unavailable.

In fact, Omaze repeatedly exhorted entrants to view the Experience Rules, Official Rules and other portions of the website.  *E.g.*, ECF No. 1, Ex. A.  Courts presented with similar fact patterns have been quite clear that a reasonable sweepstakes entrant cannot place their head in the sand and substitute their own subjective view of what the sweepstakes sponsor may mean by a word like "donate."  *See, e.g., Derbaremdiker*, 2012 WL 4482057, at *6 ("Because the terms and conditions of the Sweepstakes were fully disclosed in the Official Rules, which consumers were directed to review by both the receipts given to customers and the Website, a reasonable consumer that read the Official Rules as directed would not have been misled by the statements on the receipt."); *Wright v. Publishers Clearing House, Inc.*, 439 F. Supp. 3d 102, 119 (E.D.N.Y. 2020) (holding in light of rules and other disclosures, which defendant instructed them to read, no reasonable sweepstakes

4
**REPLY ISO MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

entrant would rely on statement that "only one order is all it takes!" to believe that purchasing a product would increase chances of winning).

The *Haskell* court rejected a similar argument to that made by Plaintiffs here, when finding that the use of the words "finalist" or "winner" in a sweepstakes solicitation was not misleading in light of more specific disclosures provided elsewhere, and at best constituted mere "puffery." *Haskell*, 857 F. Supp. at 1401. The court went on to note that this was the very reason that it was important to consider the disclosures themselves under the incorporation-by-reference doctrine:

> In light of the circumstances here, the exemplars [of sweepstakes solicitations] provided by defendants may be considered as if incorporated by reference into the complaints under Rule 10(c). A ruling to the contrary would permit a plaintiff in a case such as this, involving allegedly misleading statements, to deprive the defendant of the opportunity to make a motion to dismiss based on the context of the particular statements on the bare claim that there may be more damaging contexts. This would be inconsistent with case law that permits the court to decide ***as a matter of law*** whether allegedly misleading statements amount to mere "puffery" or are factual claims on which a reasonable consumer could rely.

*Id.* at 1398 (emphasis added); *see also id.* at 1401 (plaintiff's "hope that discovery will somehow turn up favorable examples is not sufficient to deprive defendants of their opportunity to avoid the burdens of discovery through a motion to dismiss").

In any event, nothing in Plaintiffs' Complaint or Opposition establishes that any of the Plaintiffs themselves viewed a particular use of the word "donate" on Omaze's website, and reasonably relied on that word alone to assume that none of their donation would be used to cover fees and expenses relating to the administration of the sweepstakes. They cannot establish this, because it would mean grappling with the clear and prominent disclosures to the contrary, as well as common sense. Plaintiffs would have to either admit that they saw the disclosures and ignored them (as they have already essentially conceded by alleging that they "relied on" the Experience Pages when entering the sweepstakes), or that they placed their head in

the sand and unreasonably failed to read any of the actual rules, terms or information about the sweepstakes they were entering (as they seem to suggest by claiming, without evidence or allegation, that they did not see the Official Rules prominently linked on the Experience Pages). Their conclusory allegations that they would not have donated, or would have donated less, "had [Omaze] not misrepresented the purchase as donations to the charities identified by Omaze," are therefore plainly insufficient, particularly under the heightened pleading standard of Rule 9(b)—and particularly as their donations did undisputedly go to those charities. Plaintiffs must establish that they reasonably believed Omaze was not retaining part of the donation to cover fees and expenses, which they cannot do.

Accordingly, Plaintiffs' bare allegations, which are clearly contrary to the disclosures provided by Omaze, are insufficient to establish that they or a "reasonable consumer" would be misled and the claims must fail.

### 2. *Plaintiffs fail to allege "unlawful" conduct by Omaze.*

Next, Plaintiffs cannot get around the indisputable fact that no participant is required to pay for a chance to win an Omaze sweepstakes. This is fatal to their UCL claim premised on California Penal Code section 319.

Where no consideration is required to participate, there is no lottery under Section 319. *California Gas. Retailers v. Regal Petro. Corp*., 50 Cal. 2d 844, 852 (1958). Plaintiffs' original "group consideration" theory was that even though they cannot dispute that ***any person*** can enter an Omaze sweepstakes for free, the sweepstakes still require consideration because some users obtain entries by donation and therefore the sweepstakes requires a "group" to provide consideration. Mtn. at 16-18. Omaze refuted this argument by showing that the same argument was considered and rejected in *Regal*, and the only requirement imposed by the case law is that free entry is available to every single participant on equal terms. *Id.* Plaintiffs then pivoted in their Opposition to an allegation previously of little emphasis, changing their argument to contend that Omaze's sweepstakes require consideration

because they provide more entries as a thank-you for a higher donation and because of a purported "policy of not holding prize drawings until sufficient amounts of money are received."[1] Opp. at 12.

This argument continues to misconstrue the test for establishing consideration. As *Regal* clearly held: "***The question of consideration is not to be determined from the standpoint of the defendant***." 50 Cal. 2d at 854-55 (emphasis added).  Instead, "[t]he question is: Did the holders of prize tickets pay a valuable consideration for the chance?  Certainly those who received prize tickets without buying an admission ticket did not pay anything for the chance of getting the prize.  They did not hazard anything of value."  *Id.*  In other words, for purposes of Section 319, it does not matter how much or how little consideration Omaze allegedly received, it mattered whether Plaintiffs had an opportunity to enter for free.  They did, as admitted in their Complaint. ECF No. 1 at ¶ 79.  Moreover, the fact that participants received more entries as a thank you for larger donations, where they chose to donate, is of no moment.  Using Plaintiffs' own analogy comparison, this is no different than McDonald's giving a patron more entries for buying a large order of fries instead of a small order of fries.  *Id.* at ¶ 69.

Plaintiffs offer no legal authority supporting their current theory.  Instead, they continue to misinterpret cases that simply do not stand for the proposition for which they are cited.  *See* Opp. at 11 (discussing this theory and citing "*Cf. Shira*, 62 Cal. App. 3d at 459 (explaining that "a promotional scheme is *illegal* where *any* and *all* persons *cannot* participate in a chance for the prize and *some* of the participants who want a chance to win must pay for it") (emphasis in original)).  There is nothing in *Shira* or any other case that states a defendant must conduct a sweepstakes in which

---

[1] Indeed, Plaintiffs now make this allegation the centerpiece of their Opposition, contending that Omaze "never denies" it in the Motion. Opp. at 11.  To be clear, Omaze denies the allegation. Omaze does not postpone drawings until it is assured a profit. For purposes of the Motion, however, it is irrelevant as this does not constitute a violation of Section 319.

**7**
**REPLY ISO MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

every single entrant *actually* entered for free.  The cases merely require that the defendant conduct a sweepstakes in which every single entrant was *able* to enter for free.  Plaintiffs cannot dispute that Omaze's sweepstakes have never required a single person to pay to participate.  Additionally, Plaintiffs have not alleged and cannot prove that a single sweepstakes ever occurred in which any person was prevented from entering for free, or prevented from winning the prize because they entered for free.  Thus, Plaintiffs' Section 319 argument fails.

Plaintiffs' UCL claim premised on state law disclosure requirements also cannot stand, particularly where they rely on statutes that are not even identified in the Complaint and impermissibly distort the others:

- **Cal. Bus. Prof. Code § 17539.15(b):** Plaintiffs assert that "the Complaint alleges that Omaze fails to include a 'a clear and conspicuous statement of the no-purchase-or-payment-necessary message' in the official rules for the sweepstakes." Opp. at 12.  The Complaint alleges no such thing.  In any case, Plaintiffs make this claim in clear disregard of the disclosures submitted along with the Motion (*e.g.*, ECF No. 17-2 at 1) and claim they may do so because it is a "factual question, not appropriate in a motion on the pleadings." Opp. at 12.  They are wrong, but this claim is particularly disingenuous because *their own Complaint* directly contradicts it.  *See* ECF No. 1, Ex. A at 4 ("NO PURCHASE, PAYMENT, OR CONTRIBUTION NECESSARY TO ENTER OR WIN. Contributing will not improve chances of winning.").  The same disclosure is also set forth in two other, separate places on the same page: immediately under the description of the experience (*id.* at 1) and immediately preceding the donate buttons (*id.* at 2).

- **Cal. Bus. Prof. Code § 17539.5(e)**: As Omaze already pointed out, this is not a case in which there are a finite number of solicitations and therefore the odds can be reliably calculated;[2] therefore, Omaze properly discloses that the odds of winning depend on the number of entries.  Mtn. at 19-20.  Plaintiffs respond that "Omaze controls the number of solicitations because it controls the number of emails and ads it sends out," Opp. at 17, but this does not show that Omaze

---

[2] Plaintiffs suggest that the number of entries is never within the sponsor's control, but they are obviously wrong.  Consider a promotion in which each of a run of 100,000 candy bar wrappers has a chance to be printed with a "golden ticket," yet only 5 golden tickets are printed. These odds are easily calculable.

controls or even knows how many people will actually enter (particularly as Omaze advertised on social media).  Indeed, Omaze wants as many people to enter as possible.  Plaintiffs' reading of the statute would require Omaze to calculate and disclose odds of winning that are incalculable, and if Omaze even attempted to do so, Plaintiffs would simply claim the odds are misleading.

- **Cal. Bus. Prof. Code §§ 17539.15(j)**, **17539.1(a)(3), (a)(7)**: Omaze complies with the plain, express language of both of these statutory provisions by announcing the dates on which a drawing will be held and awarding the prize when the drawing is held.  There is nothing in these sections to suggest that postponing a drawing to a new, announced date is a violation.  Further, to the extent that Plaintiffs contend postponing a drawing alters the odds of winning,[3] Omaze is not required to and does not disclose odds of winning in the first instance, as they are incalculable regardless of when the drawing takes place.

- **Cal. Bus. Prof. Code § 17539.1(a)(4)**:  Plaintiffs cannot refute that this section applies only to a "contest," which is a defined term under the statute and requires skill.  The defined term does not apply to Omaze's sweepstakes because, among other reasons, they do not require skill.  Plaintiffs' suggestion that "contest" *should* apply beyond its definition is absolutely not plausible in the face of the defined term, and for the reasons Omaze explained in detail in its Motion.  Mtn. at 19.

- **Cal. Bus. Prof. Code § 17537.1**:  Plaintiffs do not respond to Omaze's showing that this statute is inapplicable.  Mtn. at 19.

Because Omaze's actions do not violate any of the foregoing statutory sections, Plaintiffs' claim under the UCL's unlawful prong is not plausible.  See *Webb v. Smart Documents Solutions, LLC*, 499 F.3d 1078, 1082 (9th Cir. 2007) (noting that defendant's conduct "must violate a law . . . in order for [p]laintiffs to state a claim for relief under Section 17200's 'unlawful' prong").

3. *Plaintiffs fail to allege "unfair" conduct by Omaze.*

Finally, Plaintiffs inaccurately contend that Omaze "ignor[ed]" Plaintiffs' supposed stand-alone claim under the "unfairness" prong of the UCL.  Opp. at 15.

---

[3] Plaintiffs intentionally fail to disclose the ways in which Omaze compensates entrants should a drawing be postponed, in an attempt to survive the motion to dismiss, but it ultimately makes no difference to whether a statutory violation exists.

Plaintiffs alleged in their Complaint that Omaze's disclosures are misleading and Omaze thoroughly rebutted such an argument. Nowhere in Plaintiffs' Complaint did they allege a basis for liability under the "unfairness" prong that is somehow different than their allegations under the other prongs of the statute, or that would require a materially different analysis.

Plaintiffs *now* argue the unfairness prong as a fall-back position, contending that "[e]ven if Defendants somehow avoided technically violating the law, their conduct violates the UCL's 'unfair' prong." Opp. at 15. Setting aside that this argument effectively concedes that Omaze sufficiently addressed their allegations in the Motion, Plaintiffs mischaracterize the unfairness prong. It is not a mere fall-back or catch-all provision to gather up and salvage allegations that do not otherwise state a claim. See *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104-1105 (N.D. Cal. 2017) ("[C]ourts in this district have held that where the unfair business practices alleged under the unfair prong of the UCL overlap entirely with the business practices addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive."); *Punian v. Gillette Co.*, 2016 WL 1029607, at *17 (N.D. Cal. Mar. 15, 2016) (same); *Martinez v. Welk Grp., Inc.*, 907 F. Supp. 2d 1123, 1142 (S.D. Cal. 2012) ("[B]ecause the Court has already found that Plaintiff's alleged violations under the unlawful prong fails, Plaintiff cannot properly tether his 'unfair' allegations to an applicable statutory violation.").

Rather, to establish a violation of the unfairness prong in an alleged false-advertising case like this one, Plaintiffs must show "that the advertisement is "either actually misleading or [] has a capacity, likelihood or tendency to deceive or confuse the public," and is "likely to deceive a reasonable consumer." *Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 646–47 (N.D. Cal. 2019). Again, Omaze has thoroughly demonstrated that Plaintiffs have failed to plausibly allege that the disclosures were misleading or likely to deceive a reasonable consumer. And to the

extent that Plaintiffs again rely on their previously-ancillary allegation that Omaze postponed the drawing date of one or more sweepstakes beyond the initially-announced date, they fail to show that Omaze misled them by originally announcing a drawing date that was later moved. For example, Mr. Juranek alleges that he made a donation of $25 to enter a drawing for a Tesla automobile that was ultimately postponed. ECF No. 1 at ¶ 116. He does not identify when the drawing was originally scheduled, the date to which it was allegedly postponed, or that he would have done anything differently if Omaze had originally scheduled the drawing for the date to which was ultimately postponed. This is his burden.

### B. Plaintiffs' Unjust Enrichment Claim Fails

Plaintiffs' unjust enrichment claim (really, a quasi-contract claim) is predicated on the same alleged conduct identified as the basis for their other claims, so the claims rise and fall together. Should the Court dismiss the other claims in this case, so too must the Court dismiss this claim. *See Gudgel v. Clorox Co.*, No. 20-CV-05712-PJH, 2021 WL 212899, at *6 (N.D. Cal. Jan. 21, 2021) (holding that "plaintiff's failure to identify an actionable deception in the context of the "reasonable consumer" test also requires the dismissal of her unjust enrichment claim").

In any event, however, Plaintiffs' theory is not cognizable in the context of this case. Omaze's disclosures advised Plaintiffs they would receive entries for chances to win Omaze sweepstakes as a thank you for donating to charity. This is precisely what ***Plaintiffs*** allege they sought, and unjust enrichment claims have been dismissed on these grounds. *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008). Plaintiffs' mere conclusory statement that the authorities Omaze cites for support "are inapposite" does nothing to explain why they do not apply. They are on point on this issue, particularly in the context of a sweepstakes. *See Derbaremdiker*, 2012 WL 4482057, at *6 (dismissing unjust enrichment claims founded on allegedly misleading sweepstakes solicitation and holding that "because plaintiff received exactly what was represented to him in exchange for completing the Survey, it does not appear that

plaintiff could allege any basis for finding the defendant unjustly enriched"). The donations have been made, the drawings have occurred, the prizes have been awarded and the charities have received grants running from the promotion. Plaintiffs received the very chances to win that they allegedly bargained for. They cannot now claim—after they did not win—that they conferred a benefit on Omaze that Omaze did not reciprocate and now must somehow provide restitution.

### C. Plaintiffs Lack Standing to Sue

To make out their claims under the UCL and FAL, Plaintiffs must establish some "loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury." *In re Sony Gaming Networks*, 903 F. Supp. 2d 942, 965 (S.D. Cal. 2012). Plaintiffs allege they believed they were donating to charity and had they known Omaze was receiving a percentage (despite this being set forth in the disclosures), they would not have donated less or not donated at all. If Plaintiffs intended to donate to charity—that was, after all, a purported basis for their decision to enter the sweepstakes through the donate method of entry—the only plausible alternative is that they would have donated the money to the same charity, directly. Thus, the parties that could have been harmed, if at all, are the charities. Plaintiffs misstate Omaze's position on this point and thus, do not refute it. They also attempt to salvage their standing by asserting that they would have had to spend the same amount they already donated through Omaze a second time to donate to the charity. The Complaint, however, contains no allegation that they have actually done this. As such, Plaintiffs failed to plead any injury to sustain these claims.[4]

---

[4] Obviously, to the extent that Plaintiffs contend that Omaze's alleged misconduct has deprived them of the benefit of the satisfaction of donating to charity, Opp. at 22, that is not a cognizable economic harm under the UCL and FAL.

### D. The First Amendment Bars Plaintiffs' Claims Premised upon Charitable Solicitations Concerning the Allocation of Donations

It bears repeating what Plaintiffs seek in their Complaint as to donation-related disclosures: (1) an injunction "mandat[ing] that Defendant . . . conspicuously and adequately inform consumers how much of each payment goes to Omaze and how much goes to each identified charity" and (2) civil liability in the form of damages and restitution for not disclosing this information. Mtn. at 23. Seeking such relief violates Omaze's First Amendment rights under *Riley*.

Plaintiffs respond by arguing that *Riley* permits fraud claims, but this simplistic analysis ignores a subsequent case, *Illinois, ex rel. Madigan v. Telemarketing Assoc., Inc.*, 538 U.S. 600 (2003), which, building on *Riley*, expressly rejected the argument Plaintiffs make here. Under *Madigan*, a commercial fundraiser's "bare failure to disclose" the allocation of charitable donations "directly to potential donors does not suffice to establish fraud." *Id.* at 606. The *Madigan* Court clarified the limited kind of fraud action that would fall outside of *Riley*'s holding concerning fraud claims: "when nondisclosure is accompanied by ***intentionally misleading statements*** designed to deceive the listener, the First Amendment leaves room for a fraud claim." *Id.* (emphasis added). So as to leave no doubt what it meant, the Court further clarified that: "[a] [f]alse statement alone does not subject a fundraiser to fraud liability"; "[h]igh fundraising costs, without more, do not establish fraud"; "[a]nd mere failure to volunteer the fundraiser's fee when contacting a potential donee, without more, is insufficient to state a claim for fraud." *Id.* at 620, 624. The Court emphasized the high burden a plaintiff would have to meet to ensure sufficient room for protected speech involving charitable solicitations, which it characterized as "exacting proof requirements." *Id.* at 620; *see also Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2386 (2021) (continuing to apply exacting scrutiny to state laws that may compel disclosure of charitable donor identities, ultimately finding that law in question was not narrowly tailored to interest in preventing fraud).

1    Plaintiffs' Complaint does not come close to alleging intentionally misleading
2    statements concerning the allocation of donations, let alone to the standard required
3    by the Supreme Court.  Rather, Plaintiffs allege that Omaze failed to make required
4    disclosures about the allocation of donations; or, when presented with those very
5    disclosures, contend that the disclosures were not prominent enough.  But the
6    Supreme Court has been clear that the types of disclosures Plaintiffs claim are
7    required and ask this Court to enforce are, in fact, not required and even if Omaze
8    failed to make them, that does not amount to fraud.  Plaintiffs cannot premise a claim,
9    exacting civil liability or the specter of injunctive relief under the power of a judicial
10   decree, on a mere alleged omission when Omaze cannot be constitutionally required
11   to supply the alleged information at all.  Thus, the First Amendment bars Plaintiffs'
12   claims premised upon solicitations concerning the allocation of charitable donations.

### E.  Plaintiffs Obfuscate the Complaint's Bare and Conclusory Allegations with a Decade of Historical Allegations

15   Finally, in its Motion, Omaze pointed out that Plaintiffs' allegations concerning
16   conduct occurring between 2009 and April 15, 2017—the outside limitations date on
17   Plaintiffs' claims—are entirely unmoored from the claims at issue in this action.  For
18   instance, how could Plaintiffs have been misled by a statement on Omaze's website in
19   2009 when the earliest sweepstakes they claim to have participated in took place in
20   2015, six years later?  These historical allegations only obfuscate the Complaint's
21   bare and conclusory allegations, particularly as to the individual Plaintiffs.

22   Plaintiffs' response to this argument is that they are not basing their claims on
23   any activity in the distant past (the history is for "context," apparently).  But that is
24   not accurate.  The Complaint prefaces the individual Plaintiffs' experiences with the
25   historical allegations as to Omaze's practices spanning over a decade.  ECF No. 1 at
26   ¶¶ 26-103; Opp. at 2-8.  The allegations as to the individual Plaintiffs, which
27   immediately follow, do not specify—or limit—which of these materials they
28   purportedly relied on in entering sweepstakes.  In fact, in their Opposition, Plaintiffs

1  double-down on their position that their claims are directly predicated on the
2  "contextual" allegations falling outside the limitations period. Opp. at 10 (attempting
3  to rebut Omaze's showing that the manufactured allegations do not actually pertain to
4  these Plaintiffs, by arguing that the "Complaint alleges that each of the Plaintiffs
5  purchased entries into Omaze's lotteries *based on Omaze's representations above*")
6  (emphasis added). This would mean that Plaintiffs purport to have relied on material
7  dating back to 2009 in deciding to participate in sweepstakes that took place after
8  2015. Yet not one of the individual Plaintiffs allege that they visited Omaze's
9  website in any year prior to 2015, making it implausible they relied on *any* material
10 predating their visits. More importantly, each count of the Complaint incorporates
11 these historical allegations in their entirety and requests relief based upon them,
12 confirming that Plaintiffs are basing their claims on past conduct.

13       The inclusion of allegations in the Complaint prior to 2017 is confusing and
14 completely irrelevant at best, and disingenuous at worst. Plaintiffs seek to make
15 conduct in these years actionable when it is not. Plaintiffs should therefore be
16 required to remove these historical allegations from the Complaint and allege how, if
17 at all, they were actually misled by the actual disclosures.

18       **F.    Plaintiffs Are Not Entitled to Leave to Amend**

19       Plaintiffs' request for leave to amend should be denied to the extent that the
20 defects identified by Omaze herein relate to the legal infeasibility of Plaintiffs'
21 claims, which cannot be overcome by alleging additional facts. *Leadsinger, Inc. v.*
22 *BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008). Aside from Omaze's argument
23 that Plaintiffs fail to "connect the dots" between the allegedly misleading disclosures
24 and their purported conduct in response—which argument the Court need not even
25 rule on, if the Court agrees that Plaintiffs' claims are insufficient to show that a
26 reasonable consumer would be misled in the first instance—all of Omaze's arguments
27 are legal in nature and cannot be remedied by amendment.
28

## III. CONCLUSION

For the foregoing reasons, Omaze respectfully requests that the Court dismiss this case in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).

Dated:  July 23, 2021                           WARGO & FRENCH LLP

                                                By:  */s Jeff Williams*
                                                     JEFFREY N. WILLIAMS

                                                Attorneys for Defendant Omaze, Inc.