UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREAS KNUTTEL, et al.,<br><br>             Plaintiffs,<br><br>      v.<br><br>OMAZE, INC.,<br><br>             Defendant. | Case No. 21-cv-02726-JST<br><br>**ORDER GRANTING MOTION TO DISMISS FOR IMPROPER VENUE AND TRANSFERRING CASE**<br><br>Re: ECF No. 14 |

Before the Court is Defendant Omaze, Inc.'s motion to dismiss for improper venue, or transfer venue under 28 U.S.C. § 1404(a). ECF No. 14. Plaintiffs Andreas Knüttel, Matthew Juranek, and Adriana Carlin oppose the motion. For the reasons below, the Court will grant the motion to dismiss for improper venue and transfer this case to the Central District of California under 28 U.S.C. § 1406(a).[1]

## I.   BACKGROUND

Defendant Omaze is a Los Angeles-based for-profit company that partners with charities to raise money online. Omaze solicits donations online in exchange for chances to win prizes, and gives a portion of the money it receives to charity. Plaintiffs Knüttel, Juranek, and Carlin all made donations to Omaze and now bring a putative class action alleging that Omaze has engaged in deceptive and unfair business practices in how it runs and markets its online fundraising campaigns, in violation of California law.

The parties dispute whether venue is proper in the Northern District of California. Plaintiffs argue venue is proper because Omaze marketed and sold its products throughout

---

[1] In light of this ruling, the Court does not reach Omaze's motion to transfer under 28 U.S.C. § 1404(a).

1  California, including in the Northern District. Plaintiffs further allege that one of the three
2  Plaintiffs – Knüttel – saw Omaze ads, accessed Omaze's website, and donated to Omaze
3  campaigns while living in San Jose, CA, which is located in the Northern District. Plaintiffs argue
4  that this lawsuit accordingly arose from events that happened in this district and that Omaze
5  directed its conduct towards this district. Plaintiffs argue that either of these findings suffices to
6  make venue proper in the Northern District.

7  Omaze argues that the connection between its activities and this district are too tenuous to
8  make venue proper. Omaze argues that if Knüttel's visit to Omaze's website were enough to
9  establish venue in the Northern District, then Omaze could be sued in any district in which a
10 would-be plaintiff accessed its website – which is to say, potentially every district in the country.
11 Omaze argues that such an outcome would contradict the underlying purpose of the venue statutes,
12 which is to limit lawsuits to those districts where either the defendant resides or the defendant's
13 conduct gave rise to the suit. In Omaze's view, venue is instead proper in the Central District of
14 California, because that is where Omaze is based and makes all its website and marketing
15 decisions. Omaze thus moves to dismiss for improper venue under Rule 12(b)(3).

## II. JURISDICTION

This Court has subject-matter jurisdiction over this putative class action under 28 U.S.C. § 1332(d)(2): the amount in controversy exceeds $5 million and at least one member in the proposed class of over 100 members is a citizen of a different state from the Defendant. This Court has supplemental jurisdiction over any state-law claims under 28 U.S.C. § 1367.

## III. LEGAL STANDARD

Once a defendant has moved to dismiss for improper venue under Rule 12(b)(3), "the plaintiff bears the burden of showing that venue is proper." *Autodesk, Inc. v. Kobayashi + Zedda Architects Ltd.*, 191 F. Supp. 3d 1007, 1020 (N.D. Cal. 2016) (citing *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979)). At that point, the "pleadings need not be accepted as true, and facts outside the pleadings may be considered." *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009) (per curiam).

Under 28 U.S.C. § 1406(a), "if the court determines that venue is improper, the court must

1  either dismiss the action or, if it is in the interests of justice, transfer the case to a district or
2  division in which it could have been brought. Whether to dismiss for improper venue, or
3  alternatively to transfer venue to a proper court, is a matter within the sound discretion of the
4  district court." *Autodesk, Inc.*, 191 F. Supp. 3d at 1020-21 (simplified).

## IV. DISCUSSION

### A. Transactional Venue

Under 28 U.S.C. § 1391(b)(2), venue is proper in the district where "a substantial part of the events or omissions giving rise to the claim occurred." This substantiality inquiry focuses on the "relevant activities of the defendant, not of the plaintiff." *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995).[2] And "[o]nly the events that directly give rise to a claim are relevant." *Lawler v. Tarallo*, No. C 13-03284 MEJ, 2013 WL 5755685, at *3 (N.D. Cal. Oct. 23, 2013) (simplified).

Plaintiffs contend that "a substantial portion of the events alleged occurred" in the Northern District of California because "Omaze marketed and sold its products and services throughout California, including in this district." ECF No. 26 at 8. Supporting that contention are Plaintiffs' allegations that one of the three Plaintiffs – Knüttel – "visited the Omaze website," "viewed Omaze's marketing," "created an Omaze account, signed up for Omaze's emails, and purchased numerous entries into multiple sweepstakes," all while living in the Northern District. ECF No. 1 ¶ 106; ECF No. 26 at 5.

Omaze argues that it "has no particular connection to the Northern District of California other than the mere happenstance that Knüttel resides in this District and entered an Omaze sweepstakes." ECF No. 14 at 9. It reasons that these facts cannot be enough to establish venue, or else venue would be proper in any district in the country. *Id.*

The Court agrees that venue does not sweep that broadly. Venue is "intended to preserve

---

[2] Although the Ninth Circuit has held that, in tort actions, the location where a plaintiff feels the harm is also "a relevant factor," it is but one factor courts must consider in their substantiality analysis. *See Myers v. Bennett L. Offs.*, 238 F.3d 1068, 1076 (9th Cir. 2001). And Plaintiffs here allege merely economic harm, which courts generally agree "is not by itself sufficient to warrant transactional venue." *See* Charles A. Wright & Arthur A. Miller, 14D Fed. Prac. & Proc. Juris. § 3806, n.22 (4th ed.) (citing cases); *see also Myers*, 238 F.3d at 1076 (recognizing "the locus of the injury" as "a relevant factor" for venue in an invasion-of-privacy tort case).

3

the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute." *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994). As a result, the venue inquiry focuses on the defendant's activities, not the plaintiff's. *Woodke*, 70 F.3d at 985. Furthermore, "[t]here is a tendency to conclude that suffering economic harm within a district is not by itself sufficient to warrant transactional venue there." Wright & Miller, 14D Fed. Prac. & Proc. Juris. § 3806. Otherwise, "venue almost always would be proper at the place of the plaintiff's residence, an option that Congress abolished in the general venue statute."[3] *Id*. Courts thus must look "not to a single triggering event prompting the action, but to the entire sequence of events underlying the claim." *Norsworthy* v. *Diaz*, 20-CV-01859-JST, 2020 WL 10965424, at *2 (N.D. Cal. June 10, 2020) (simplified).

Applying that sequence-of-events standard, the Court finds that the substantial events underlying Plaintiffs' claims did not occur in the Northern District. Plaintiffs' claims all arise from Omaze's website – the webpages that advertise its "experiences," prompt visitors to donate, and explain (or do not explain) the rules governing its fundraising campaigns. At the heart of those claims are Omaze's decisions about website design and what language to use on its website to market the campaigns. As Omaze acknowledges, however, all "decision-making concerning Omaze's Website and marketing efforts [was] centralized at Omaze's headquarters in Los Angeles, California" during "all times relevant to this case." ECF No. 17 at 2. Similarly, Plaintiffs' complaint alleges that Omaze's "wrongful acts and omissions . . . were carried out and/or directed from Defendant's California headquarters" in Los Angeles. ECF No. 1 at 22. Thus, while Knüttel's visit to the Omaze website may have been the "single triggering event" that ultimately ripened his claims, the "sequence of events underlying [his and the other Plaintiffs'] claims" all took place in the Central District. *See Norsworthy*, 2020 WL 10965424, at *2 (simplified).

Plaintiffs have thus failed to show that the Northern District "host[ed] a 'substantial part' of the events" which gave rise to their claims. *Id.* (simplified). That failure defeats their claim

---

[3] The Court recognizes that this option was only ever available in diversity cases. But the fundamental point regarding Congress's intent remains.

4

that venue is proper here under 28 U.S.C. 1391(b)(2).

### B. Residence Venue

Under 28 U.S.C. § 1391(b)(1), venue is proper in any district where a defendant "resides." A corporate defendant resides in a district if they have engaged in intentional conduct "expressly aimed" towards a district that caused "harm that the defendant [knew was] likely to be suffered" there. *See AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1209 (9th Cir. 2020) (simplified); *see* 28 U.S.C. § 1391(d) (explaining that a defendant resides in a district if their contacts would be "sufficient to subject it to personal jurisdiction if that district were a separate State").

For the first time,[4] Plaintiffs argue that venue in the Northern District of California is proper because Omaze "resides" here. ECF No. 26 at 8. Plaintiffs contend that Omaze resides in the Northern District because Omaze expressly aimed its tortious conduct towards this district through its website. ECF No. 26 at 8. But the lone fact underpinning Plaintiffs' express-aiming argument is that Knüttel saw Omaze's online ads while living in the Northern District. That circumstance, standing alone, is not enough to meet Plaintiffs' burden.

As the Ninth Circuit has explained, for a defendant's website to show express aiming, the website must "directly target[]" the forum. *AMA Multimedia*, 970 F.3d at 1210. But there is a difference between conduct that *happens* to reach a forum and conduct that is *aimed* towards a forum. As the *AMA* court emphasized, "[n]ot all material placed on the Internet is, solely by virtue of its universal accessibility, expressly aimed at every [forum] in which it is accessed." *AMA Multimedia, LLC v. Wanat*, 970 F.3d at 1211 (quoting *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1231 (9th Cir. 2011)). None of Plaintiffs' factual allegations suggest that Omaze was specifically targeting either Knüttel or the Northern District. None of Plaintiffs' allegations, for instance, suggest that Omaze's website has a Northern District-specific focus, or even that Omaze markets its website in a way intended to appeal to those who live in the Northern District. *Cf. Mavrix*, 647 F.3d at 1229 (9th Cir. 2011) (finding that a website purposely availed itself of the California market by exploiting its celebrity and entertainment industries). If anything, Plaintiffs'

---

[4] Although Plaintiffs' complaint did not plead § 1391(b)(1) as a basis for venue, the Court considers their argument in the interest of judicial efficiency.

complaint suggests that Omaze's fundraising campaigns are intended to reach a global audience, given that residents of nearly every country in North America, South America, Europe, and Australia may participate. *See* ECF No. 1, Ex. A at 49; *id.*, Ex. B at 53 (identifying eligibility requirements). Thus, "[a]lthough [Omaze] may have foreseen that [its website] would attract a substantial number of viewers in the [Northern District], this alone does not support a finding of express aiming." *AMA Multimedia,* 970 F.3d at 1210.

Because Plaintiffs do not allege facts that show Omaze expressly aimed its conduct towards the Northern District, Omaze does not reside here. That is fatal to Plaintiffs' venue argument under 28 U.S.C. § 1391(b)(1).

### C. Transferring Venue

Now that the Court has concluded Plaintiffs filed their case in the wrong district, the Court must either "dismiss for improper venue" or "transfer [the] case" to the proper district if it would "be in the interest of justice" to do so. *See* 28 U.S.C. § 1406(a). But because "dismissal of an action that could have been brought elsewhere is time-consuming and justice-defeating," courts usually find that transfer is in the interest of justice. *Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990) (simplified). The Court so finds, and will thus transfer this case to the Central District of California.

### CONCLUSION

For the reasons explained, the Court finds that venue in the Northern District of California is improper and that transfer under 28 U.S.C. § 1406(a) is appropriate. The Court thus grants Omaze's motion to dismiss for improper venue. The clerk is directed to transfer this case to the United States District Court for the Central District of California.

**IT IS SO ORDERED.**

Dated: November 16, 2021



JON S. TIGAR
United States District Judge